## THE WAVERLEY.

### (District Court, S. D. New York. June 26, 1907.)

1. COLLISION—STEAMSHIP AIDING GROUNDED TOW IN CHANNEL—ATTEMPT OF ANOTHER VESSEL TO PASS.

While the steamship Ligonier and a tug were working to get the Ligonier's tow off the ground at the southern end of the canal leading from Port Arthur into Sabine Pass, the steamship Waverley, coming down the canal, attempted to pass through the narrow space between the Ligonier and the west bank, resulting in a collision. The Ligonier did not consent to such passing; but, on the contrary, both she and her tow sounded a number of blasts of their whistles intended to warn the Waverley of the danger. The Ligonier stopped her engines, but could not move further to the eastward because of the shallow water. *Held*, that the Waverley was solely in fault for the collision in attempting to force a dangerous passage, in the absence of an agreement by the Ligonier to co-operate.

2. NAVIGABLE WATERS—OBSTRUCTION OF CHANNEL BY VESSELS—CONSTRUCTION OF STATUTE.

Section 15 of Act March 3, 1899, c. 425, 30 Stat. 1152 [U. S. Comp. St. 1901, p. 3543], which makes it unlawful to anchor or tie up any vessel in a navigable channel in such manner as to prevent or obstruct the passage of other vessels, was not intended to prevent the aiding of a vessel grounded or in difficulty, even if it involves the temporary obstruction of a channel.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libelant.

Butler, Notman & Myndefse, for claimant.

ADAMS, District Judge. This action was brought by the J. M. Guffey Petroleum Company, the owner of the steamship Ligonier, against the steamship Waverley, to recover the damages sustained through a collision between those vessels on the 28th day of January,

1905, about 9 o'clock a. m. at the mouth of the Port Arthur Canal. This was an artificial channel several miles long running from Port Arthur to the Sabine Pass. The tide therein was greatly affected by the wind but on this occasion it was nearly normal, with a flood current of about 1½ miles per hour.

The Ligonier alleged that she left Port Arthur on the 27th of January with the loaded barge Conemaugh in tow on hawsers of about 200 fathoms, bound for sea, and had proceeded nearly through the canal and was about to emerge into the Pass, when the barge took the ground on the east side of the canal. The Ligonier, with the tug Della assisting her, kept pulling on the barge for several hours but did not succeed in moving her; that while thus engaged the steamer Waverley, outward bound, at about 9 o'clock a. m. the 28th, approached through the canal and notwithstanding warning signals given by the Ligonier and the Conemaugh continued to approach with the evident intention of forcing her way through the canal to the westward of the Conemaugh and the Ligonier; that the latter observing this persistence on the part of the Waverley, stopped her engines and eased the strain on the hawsers but when the Waverley came abreast of the after part of the Ligonier she apparently smelled the ground, keeled over and struck the Ligonier heavily on her starboard quarter, driving her over on the east bank of the canal and doing considerable damage, estimated at $8,000.

The Waverley alleged that she left the basin at 6:40 a. m. and when she had approached within about 2 miles of the junction of the canal and Sabine Pass, the Conemaugh was discovered apparently aground on the north-easterly side of the junction; that she was being assisted by the tug Della on her starboard quarter and the Ligonier which was towing ahead on 2 hawsers of about 75 or 100 fathoms in length; that the Ligonier was occupying a position nearly in the centre of the channel in the Sabine Pass to the south of the said point of junction; that while the Waverley was still at a considerable distance the Ligonier sounded a whistle of 7 blasts, which was answered by the Conemaugh with a similar signal and said exchange of signals was afterwards repeated between said vessels; that the said signals were, as the Waverley is informed, the private code of signals adopted by the libellant for use between their steamers and barges; that when the Waverley had approached to within about a mile, she gave a signal of one whistle to indicate that she would pass the Ligonier on the westerly side of the channel; that this signal was not answered nor were two repetitions of it given at intervals of 1 or 2 minutes; that upon approaching near enough for accurate observation, it was seen that the Ligonier had encroached upon the westerly half of the channel and that her engines were working apparently at full speed; that the distance between the Ligonier and the westerly bank of the Pass was sufficient for the Waverley to pass, although requiring careful steering, and it was within the power of the Ligonier to enlarge this space by proceeding to the eastward of mid-channel or by stopping her engines and slacking her towing hawser; that the Waverely therefore kept on, her engines running slow and navigating with all possible care and caution; that she made the turn at the junction of the canal and Pass

aforesaid and entered upon the avenue of water between the Ligonier and the westerly bank with precision; that just as the bow of the Waverley lapped the stern of the Ligonier, the latter which had negligently omitted to stop her engines or to sheer off to the eastward, carried a port wheel and kept her engines full speed ahead, thus deflecting a stream of water from her propeller to the westward and causing the bow of the Waverley to sheer against the westerly bank of the Sabine Pass; that the bow of the Waverley thereupon rebounding from the west bank, took a strong sheer to eastward and although all possible efforts were made to check her sheer by dropping her anchor and otherwise, the bluff of the port bow of the Waverley came gently in contact with the starboard side of the Ligonier.

Considerable testimony has been adduced in support of the respective contentions. After duly considering it, I have come to the conclusion that the Waverley was solely in fault for the collision. The signals which she urges were between the Ligonier and the Conemaugh, were actually designed to warn the Waverley that it would be dangerous for her to attempt to make the passage. It is true that she passed the Conemaugh without striking but by a very narrow margin, about 25 feet, and I am inclined to believe that in doing so, she took a sheer towards the western bank which she could not overcome and therefore struck it with such force as to cause her to rebound towards the east and come in contact with the Ligonier. I am satisfied that the latter did all she could to avoid the collision. She had not enough of water to the eastward to make any appreciable change in that direction, as is shown by the fact that the contact drove her at once into the bank on that side, and she did stop her engines before the Waverley was actually alongside and in time to prevent any stream of water being forced against her bow. It is possible that the Ligonier might have acted more promptly in stopping but there was evident hazard in doing so because of the flood tide and the danger of being drifted astern. I think she stopped her engines as soon as it was prudent.

The Waverley urges that the Ligonier was blocking the channel and thus violating Act March 3, 1899, c. 425, § 15, 30 Stat. 1152 [U. S. Comp. St. 1901, p. 3543], but I do not think her actions in this case placed her in fault. The Act referred to in my judgment was not intended to prevent some necessary and perhaps unavoidable obstruction of a navigable channel in aiding a vessel in difficulties and I do not consider that the Ligonier violated its provisions here.

The evident fault of the Waverley in attempting to force her way through under the circumstances obviates the necessity of making too close a scrutiny of the Ligonier's proceedings. There were doubtless several things she could have done, for example, abandon her work on the barge, if she had known the Waverley would insist upon proceeding notwithstanding the situation, but I do not deem it necessary to go into such discussions, as the attempt of the Waverley to pass without the consent or co-operation of the Ligonier, is sufficient to account for the collision.

The libellant will have a decree, with an order of reference.